**In re GRAND JURY SUBPOENA DTD. JANUARY 4, 1984.**

**United States of America, Appellant.**

**No. 249, Docket 84–6146.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1984.

Decided Dec. 13, 1984.

Mary McGowan Davis, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellant.

James A. Cohen, New York City (Page Kennedy, Douglass Maynard, Lisa Greenman, Legal Interns, Washington Square Legal Services, New York City, on brief), for appellee.

Richard M. Zuckerman, John Doar Law Offices, Richard Emery, New York City, submitted a brief for amicus curiae N.Y. Civil Liberties Union.

Sherwood B. Smith, Jr., Margaret M. Manning, Ober, Kaler, Grimes & Shriver, Washington, D.C., submitted a brief for amici curiae American Sociological Ass'n, American Political Science Ass'n and American Anthropological Ass'n).

Ann H. Franke, Lawrence White, Washington, D.C., Ralph S. Brown, New Haven, Conn., submitted a brief for amicus curiae American Ass'n of University Professors.

Before OAKES and WINTER, Circuit Judges, and CLARIE, District Judge.*

WINTER, Circuit Judge:

The United States appeals Chief Judge Weinstein's quashing of a subpoena *duces tecum* on the basis of a scholar's privilege.

We reverse and remand for further proceedings.

## BACKGROUND

On March 21, 1983, a suspicious fire and explosion occurred at "Le Restaurant" in Glen Cove, Long Island. In the course of investigating the fire, the police questioned a waiter at the restaurant, appellee Mario Brajuha. Mr. Brajuha, who is not a target of the investigation, is a Ph.D. candidate at the State University of New York at Stony Brook where he is working on a dissertation entitled "The Sociology of the American Restaurant." Mr. Brajuha related to the police that it was his practice to record contemporaneously his daily observations and conversations at Le Restaurant as field notes to be used in preparation of his dissertation. From July, 1982 until the fire in March, 1983, Mr. Brajuha entered in his journal several hundred pages recording his observations at Le Restaurant.

On January 4, 1984 a federal grand jury sitting in the Eastern District of New York issued a subpoena directing Mr. Brajuha to appear on January 18, 1984 to testify and to produce:

> any notes, documents, written or recorded material concerning the operation of, activity at, conversations at, opinions of the operations at, the "Le Restaurant" restaurant made as a result of your employment at the aforesaid restaurant during the period January, 1982 to the present.

Mr. Brajuha moved to quash the subpoena, claiming that it sought privileged materials. In support, he offered an affidavit of his attorney describing Mr. Brajuha's status as a student, giving the title of his dissertation, and stating that "many" of his research sources had been promised confidentiality. The affidavit further stated that the subpoena would require him to divulge his sources and to turn over his personal diary. The record also contains statements by scholars asserting in the abstract the need for such a privilege but adding nothing with regard to Brajuha's specific work.

On April 5, 1984, 583 F.Supp. 991, Judge Weinstein quashed the subpoena on the basis of a limited federal scholar's privilege analogous to the limited news reporter's privilege recognized in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). This appeal by the government followed.

## DISCUSSION

Rule 501 sets forth a general rule covering all recognized common-law privileges and empowers federal courts to fashion testimonial privileges, guided by the "principles of the common law as ... interpreted ... in the light of reason and experience." Fed.R.Evid. 501. The Senate Report accompanying enactment of Rule 501 expressly stated that judicial "recognition of a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis." S.Rep. No. 1277, 93d Cong., 2d Sess. 13 (1974).

 We regard the record in this case as far too sparse to serve as a vehicle for consideration of whether a scholar's privilege exists, much less to provide grounds for applying it to Brajuha. We therefore reverse and remand.

It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, *United States v. Stern*, 511 F.2d 1364,

---

* The Honorable T. Emmet Clarie, Senior United States District Judge for the District of Connecticut, sitting by designation.

1367 (2d Cir.1975); *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir.1961), a burden not "discharged by mere conclusory or ipse dixit assertions." *In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965). Brajuha's factual proffer in support of his claim of privilege hardly rises to the level of conclusory assertions. His attorney's affidavit states only that Mr. Brajuha is a doctoral candidate at SUNY, writing a dissertation entitled "The Sociology of the American Restaurant," and that, in the course of his employment as a "participant observer" at various Long Island restaurants, he has gathered information "from a variety of sources, many of whom were promised confidentiality."

▮ Surely the application of a scholar's privilege, if it exists, requires a threshold showing consisting of a detailed description of the nature and seriousness of the scholarly study in question, of the methodology employed, of the need for assurances of confidentiality to various sources to conduct the study, and of the fact that the disclosure requested by the subpoena will seriously impinge upon that confidentiality. Brajuha has provided none of the above.

Although Brajuha's proposal for a Ph.D. thesis has presumably undergone careful scrutiny by faculty members at Stony Brook and his work is being actively supervised by one or more members of that faculty, the record contains neither documentary nor testimonial evidence from scholars of the nature of the work or of its role in the scholarly literature of sociology. One need not quip that "You can't tell a dissertation by its title," to conclude that the words "The Sociology of the American Restaurant" afford precious little information about the subject matter of Brajuha's thesis. The descriptive words "sociology" and "restaurant" alone leave us with little more than an impression that Brajuha's work has to do with unspecified practices and conduct in and around places where people pay to eat.

So far as methodology is concerned, we know only that Brajuha has chosen to be a "participant observer" of some sort as a means of collecting material. What exactly Brajuha's role is, what kinds of material he hopes to collect, and how that role and that material relate to a need for confidentiality are unknown. Similarly, Brajuha has made no showing whatsoever that assurances of confidentiality are necessary to the study he is undertaking. Astonishingly, he has not even stated explicitly that confidentiality was necessary to his particular study. Rather, we know only that his attorney says he promised it to some people. There is thus no evidence of a considered research plan, conceived in light of scholarly requirements or standards, contemplating assurances of confidentiality for certain parts of the inquiry. Finally, and even more astonishingly, Brajuha has not established that all of the materials he seeks to keep from the grand jury in fact are covered by the privilege he asserts. We are told only that "many" of his sources were promised confidentiality in support of his claim that all of the papers sought by the government are protected by the privilege.

▮ Our concerns here go to the heart of the decisional process. We are asked to recognize a qualified scholar's privilege but lack a concrete factual situation in which to consider the issue. Given the present record, establishment of a scholar's privilege would require us to create virtually an unqualified and indeterminate immunity attaching generally to all academically related inquiries upon the bald assertion that someone was promised confidentiality in connection with the study. None of the arguments marshalled by the district court, taken at their strongest, support a privilege that broad. At best, they raise an arguable question as to the validity of a qualified privilege where a serious academic inquiry is undertaken pursuant to a considered research plan in which the need for confidentiality is tangibly related to the accuracy or completeness of the study. Since such a privilege could not be invoked on this record, we need not reach the question of whether it ought to be recognized under Rule 501. Moreover, even if such a privilege were recognized, only those matters legitimately covered by the privilege would be withheld after an appropriate re-

daction. Brajuha's claim of immunity for the entire journal is thus not justified.

■ We remand therefore for further proceedings. In light of the district court's evident readiness to address the privilege issue on the present record, we believe appellee should have an opportunity to amplify the record in support of his claim of privilege. However, upon the remand, he must make a good faith designation of those portions of his work arguably covered by the scholar's privilege and permit in camera inspection and redaction by the district court. Non-covered portions must be disclosed while he litigates his claim of privilege. He must also so designate matters of personal privacy in his diary for possible redaction. Further testimony before the grand jury shall be governed by these guidelines. Actual observation of criminal activity is not subject to a claim of privilege.

Reversed and remanded for further proceedings in accord with this opinion.