In the MATTER OF Frederick MODELL d/b/a Frederick Modell Company, Debtor.

Bankruptcy No. 94 B 42224 (JLG).

United States Bankruptcy Court, S.D. New York.

Aug. 30, 1994.

512

Ross & Hardies, Somerset, NJ, for debtor.

Kronish, Lieb, Weiner & Hellman, New York City, co–counsel for Republic Nat. Bank of New York.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, co–counsel for Republic Nat. Bank of New York and for remaining petitioning creditors.

Warshaw Burstein Cohen Schlesinger & Kuh, New York City, for Bank Leumi Trust Co. of New York.

*MEMORANDUM DECISION ON APPLICABILITY OF ATTORNEY–CLIENT PRIVILEGE TO DOCUMENTS IN DEBTOR'S POSSESSION*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Frederick Modell (the "debtor") and Republic National Bank of New York ("Republic"), Merchants Bank of New York, Israel Discount Bank of New York ("IDB"), and Bank Leumi Trust Company of New York ("Bank Leumi") (collectively, the "Banks"), as petitioning creditors, have been engaged in informal discovery in conjunction with this contested involuntary chapter 7 case. A dispute has arisen among the parties over Modell's assertion of the attorney-client privilege with respect to certain documents he has withheld from production.[1]

*Facts*

This involuntary case was commenced on May 5, 1994, when the Banks filed a petition pursuant to 11 U.S.C. § 303(b) and served it on the debtor in accordance with Bankruptcy Rules 1010 and 7004. That event spawned a series of motions by the Banks and debtor. Recently we denied the Banks' motion for entry of an order for relief by default and debtor's cross-motion pursuant to Bankruptcy Rule 7012 and Fed.R.Civ.P. 12(b)(6) to dismiss the petition for failure to state a claim for relief. *See In the Matter of Frederick Modell d/b/a Frederick Modell Co.,* 168 B.R. 851 (Bankr.S.D.N.Y.1994).

Throughout this process, the debtor and Banks have been engaged in informal discovery. Debtor has withheld certain documents which he admits are responsive to the Banks' discovery requests on the grounds that they are protected from disclosure by the attorney-client privilege. The Banks deny that the privilege applies. The parties have left it to us to determine whether the documents must be produced. We have reviewed them *in camera.*

1. This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(c) as made applicable herein by Bankruptcy Rules 7052 and 9014. Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the

*Discussion*

The attorney-client privilege protects communications between an attorney and his client made for the purpose of obtaining legal advice or legal services. *See P. & B. Marina, Ltd. Partnership v. Logrande,* 136 F.R.D. 50, 53 (E.D.N.Y.1991), *aff'd without op.,* 983 F.2d 1047 (2d Cir.1992). It is intended to encourage free and open communications among clients and counsel by removing the apprehension that counsel will disclose the information without the client's consent. *See Colton v. United States,* 306 F.2d 633, 636 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege extends only to those communications that are necessary to obtain informed legal advice and which would not be made without the privilege. *See United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 505 (2d Cir.1991); *Standard Chartered Bank PLC v. Ayala International Holdings (U.S.), Inc.,* 111 F.R.D. 76, 79 (S.D.N.Y.1986) (communications from the attorney to the client are generally within the protection of the privilege "if such communications contain confidential information on which the client seeks advice.").

In every instance, for the privilege to attach the relevant communication must have been made with the intent or expectation that it would remain confidential. *See United States v. Rivera,* 837 F.Supp. 565, 569 (S.D.N.Y.1993). That is determined from the surrounding circumstances. *See Solomon v. Scientific American, Inc.,* 125 F.R.D. 34, 36 (S.D.N.Y.1988) (citing *United States v. Tellier,* 255 F.2d 441, 447 (2d Cir.), *cert. denied,* 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958)). The communication must also remain confidential. Thus, the privilege may be waived by the express disclosure of a communication to a third party or impliedly

"Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). It is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(*O*).

through the client's conduct with respect to the communication. *See Bower v. Weisman,* 669 F.Supp. 602 (S.D.N.Y.1987). It is the client's responsibility to preserve the confidentiality of the privileged communication. *See In re Von Bulow,* 828 F.2d 94, 101 (2d Cir.1987) (citing *In re Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 1052, 94 S.Ct. 556, 38 L.Ed.2d 340 (1973)).

■ "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of a privileged relationship." *In re Grand Jury Subpoena Dated January 4, 1984,* 750 F.2d 223, 224 (2d Cir. 1984); *see also United States v. Schwimmer,* 892 F.2d 237, 244 (2d Cir.1989); *In re Horowitz,* 482 F.2d at 82. This is generally accomplished by way of affidavits or equivalent statements discussing the applicability of the attorney-client privilege to each document at issue. *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 473 (S.D.N.Y. 1993) (citations omitted). Mere conclusory or *ipse dixit* assertions cannot sustain a claim of privilege. *In re Bonanno,* 344 F.2d 830, 833 (2d Cir.1965); *compare Bowne of New York City, Inc. v. AmBase,* 150 F.R.D. at 474 (privilege logs submitted in support of a claim of privilege must provide sufficiently detailed information to permit a judgment as to the availability of privilege to the documents).

■ To meet his burden in this case, Modell must establish the following elements:

(1) he is or sought to become a client;

(2) the person to whom the communication was made

(a) is a member of the bar of a court or his subordinate and

(b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed

(a) by Modell

(b) without the presence of strangers,

(c) for the purpose of securing primarily either

(i) an opinion of law or

(ii) legal services

(iii) assistance in some legal proceeding, and not

(d) for the purpose of committing a crime or tort; and

(4) the privilege has been

(a) claimed and

(b) not waived by Modell.

*See, e.g., Colton v. United States,* 306 F.2d at 637; *United States v. Bein,* 728 F.2d 107, 112 (2d Cir.), *cert. denied sub nom. DeAngelis v. U.S.,* 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984); *Resolution Trust Corp. v. Diamond,* 137 F.R.D. 634 (S.D.N.Y.1991); *United States v. Davis,* 131 F.R.D. 391, 398 (S.D.N.Y.), *recons. granted,* 131 F.R.D. 427 (S.D.N.Y.1990); *First Chicago Int'l v. United Exchange Co.,* 125 F.R.D. 55, 56 (S.D.N.Y. 1989).

■ Modell has submitted a three page affidavit ("Aff.") in support of his claim that the attorney client privilege protects against production of the documents. Annexed thereto as Exhibits "A" through "E" are the allegedly privileged documents. The majority of these documents were created by Modell and delivered to Mitchell J. Devack, Esq., a member of the law firm of Nathanson, Devack & Memmoli (the "Nathanson Firm") and/or Ross & Hardies. Three documents were created by Devack and sent to Modell. *See* Exhibit A. There is no dispute that at all relevant times the Nathanson Firm and/or Ross & Hardies were acting as counsel to Modell. Likewise, there is no dispute that litigation between Modell and the Banks was either contemplated or pending when each document was generated. Thus, in reviewing the documents, we will focus only on their content. If the substance of the communication is protected, we will then ascertain whether the communication was intended to be confidential when it was made, and if so, whether the privilege has been waived.

■ Exhibit B consists of two handwritten letters from Modell to Devack: one dated June 21, 1993, regarding financing and one dated September 14, 1993, regarding a proposed payment schedule. It also includes an undated, four page memorandum regarding a draft letter to the Banks which Modell

advocated be sent to those banks that had sent demand letters and or seized the company's cash balances. Aff. ¶ 1(ii) and Exhibit B. In each document, Modell outlines his strategy for responding to pending or anticipated actions by the Banks. The substance of the documents, therefore meets the requirement that the communication be related to the procurement of legal services or legal advice. *E.g. United States v. Schwimmer*, 892 F.2d at 243; *P. & B. Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. at 53. Based upon Modell's assertion that the June 21, 1993 and September 14, 1994 letters were prepared solely for Devack's benefit, *see* Aff. ¶ 1(ii), the content of those letters, *see* Exhibit B, and our knowledge, based on the record of this proceeding, that the parties were contemplating litigation when those letters were written, *see, e.g.*, Motion to Dismiss Involuntary Petition [2] at Exhibit R, we find that Modell drafted and sent each letter with the expectation that it would remain confidential. *See, e.g., United States v. Tellier*, 255 F.2d at 447 (the client's intent that communications be confidential is to be determined from the surrounding circumstances). The privilege protects the underlying communication, not the information conveyed therein. *See In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir.1984). Thus, although the information contained in the memorandum regarding the draft letter was intended by Modell to be conveyed by Devack to the Banks, the document nevertheless is confidential. *Id.; Solomon v. Scientific American, Inc.*, 125 F.R.D. at 37. Finally, in his affidavit, Modell clearly and unequivocally states that the documents "were prepared by me for Mr. Devack and were shown to no one else, other than the attorneys at Ross & Hardies." Aff. ¶ 1(ii). Accordingly, we find that Modell has satisfied his burden of proving that those documents are protected from disclosure by the attorney-client privilege.

Like Exhibit B, Exhibits C and D to Modell's affidavit consist of miscellaneous documents drafted by Modell and sent to Devack. Exhibit C consists of Modell's handwritten memoranda. A number summarize meetings he had with the Banks at which Devack was not present. Aff. ¶ 1(iii). These documents include: a four page memorandum of a meeting with Bank Leumi dated January 19, 1993; a four page memorandum of a meeting with Bank Leumi dated January 28, 1993; a two page memorandum of a meeting with Bank Leumi dated February 16, 1994; a one page memorandum of a meeting with IDB dated February 18, 1994. Other documents reflect notes of conversations which Modell had with various bank representatives. These documents include: a three page memorandum regarding a conversation with Jeff Pfeffer ("Pfeffer") of Bank Leumi dated July 16, 1993; a one page memorandum of conversations with Bank Leumi dated February 22, 1994; a one page memorandum of a conversation with Jim Bogart of Bank Leumi, dated May 7, 1994 [3]; a one page memorandum of a conversation with Stanley Karp ("Karp") of Bank Leumi dated February 25, 1994; and a one page memorandum of a conversation with Karp and a conversation with Pfeffer dated February 25, 1994. Finally, the remaining documents consist of memoranda outlining proposed strategy and Modell's position on various issues relevant to his relationship with the Banks. They include: a one page memorandum regarding financing dated September 20, 1993 [4]; a one page memorandum prepared for a meeting with Bank Leumi dated July 6, 1993; a two page memorandum regarding financing dated November 4, 1993; a one page memorandum regarding Bank Leumi financing dated November 15, 1993, a four page, undated memorandum regarding the Banks; a one page, undated memoran-

---

**2.** "Motion to Dismiss Involuntary Petition" means Modell's Motion to Dismiss Involuntary Petition And In Opposition to Appointment of Interim Trustee, dated May 12, 1994.

**3.** The year, which is not present in the date on the document itself, was derived from the description of the document provided in the Privi-

lege Log. *See* Frederick Modell Company Privilege Log.

**4.** The year does not appear on the document itself but is reported in Modell's Privilege Log which was submitted along with his affidavit and exhibits. *See* Frederick Modell Company Privilege Log.

dum regarding the Chaifetz audit; and a one page undated memorandum addressing issues to be raised with Bank Leumi. The content of these documents, coupled with Modell's assertion that he prepared the documents solely to assist Devack in representing him, Aff. ¶ 1(iii), indicates that they were created under the expectation that they would remain confidential. *See United States v. Tellier*, 255 F.2d at 447. Because those documents were prepared to assist Devack in negotiating with the Banks, Aff. ¶ 1(iii), their content can be protected from disclosure. *See P. & B. Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. at 53; *see also Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 302 (E.D.N.Y. 1992). Exhibit D consists of a typewritten, eleven page memorandum concerning Frederick Modell Company's relationship with Republic Bank dated September 15, 1993, and a three page memorandum of a meeting with Bank Leumi dated February 16, 1994. These documents likewise were prepared by Modell to assist Devack in representing Modell with the Banks. *See Aff.* ¶ 1(iv). Thus, the content is protected. *P. & B. Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. at 53. In stark contrast to the documents annexed at Exhibit B, Modell's affidavit is *silent* on whether the confidentiality of the documents contained in Exhibits C and D has been preserved. *Compare Aff.* ¶ 1(ii) *with Aff.* ¶¶ 1(iii) *and* 1(iv). Because Modell has not established that the privilege was not waived with respect to these documents, Modell's claim of privilege must fail. "It must be emphasized that it is vital to a claim of privilege that the communications between client and attorney ... have been maintained in confidence. And, as with all privileges, the person claiming the attorney-client privilege has the burden of establishing all essential elements." *In re Horowitz*, 482 F.2d at 81–82. *See Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir.1981) ("[o]ne of the elements that the asserting party must prove is that it has

not waived the privilege"); *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323, 326 (N.D.Cal.1985) ("[t]he proponent of the privilege carries the burden of establishing all elements of the privilege, including confidentiality, which is not presumed, and non-waiver" (citations omitted)); *see also Varo, Inc. v. Litton Systems, Inc.*, 129 F.R.D. 139, 142 (N.D.Tex.1989) ("[a] failure of proof as to any element causes the claim of privilege to fail").

 Exhibit A contains three letters from Devack to Modell: a letter dated July 15, 1993, regarding the negotiation of payment terms; a letter dated December 22, 1993, regarding the Intercreditor Agreement; and a letter dated March 2, 1994, regarding negotiations with Bank Leumi. The March 2, 1994 and July 15, 1993 letters merely relate the substance of conversations Devack had with representatives of Bank Leumi (March 2, 1994 letter) and Republic (July 15, 1993 letter). Because they merely relate facts and do not contain legal advice, they are not protected from disclosure by the attorney-client privilege. *See United States v. Davis*, 132 F.R.D. 12, 15 (S.D.N.Y.1990). The December 22, 1993 letter contains Devack's advice to Modell regarding an Intercreditor Agreement executed by the Banks. Thus, the substance of that letter is privileged. *See P. & B. Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. at 53; *see also In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1036–37 ("the privilege is triggered only by a client's request for legal ... advice"). The two typed and two handwritten memoranda from Modell to Ross & Hardies annexed as Exhibit E relate to the indebtedness Modell allegedly owes the Banks. Aff. ¶ 1(v) [5]. All are undated. The first document is a typewritten, undated, one page memorandum regarding Bank Leumi. The second document appears to be a typewritten, undated, four page memorandum regarding the Banks. The third document appears to be a handwritten, undated, one page memorandum regarding Modell's position on the issues.[6] The fourth document is a hand-

---

**5.** Although the Affidavit makes reference to Ross & Hardies as recipients of these documents, Aff. ¶ 1(v), the Privilege Log fails to identify debtor's bankruptcy counsel as the recipient of any of the documents. *See* Frederick Modell Company Privilege Log.

**6.** This document does not appear to have been described in the Privilege Log.

written, undated, three page memorandum regarding the conduct of the Banks.[7] Accordingly, the substance of these documents is privileged. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1036–37. The privilege is strictly construed because it prevents disclosure of otherwise relevant information to the factfinder and thereby is at odds with the goals of liberal discovery and adjudication of matters on the merits. *See Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1576–77, 48 L.Ed.2d 39 (1976); *United States v. Goldberger & Dubin, P.C.,* 935 F.2d at 504; *Bowne of New York City, Inc. v. AmBase,* 150 F.R.D. at 473; *Misek–Falkoff v. International Business Machs. Corp.,* 144 F.R.D. 48, 49 (S.D.N.Y.1992). Modell states that no one other than counsel was "carbon copied" on the documents annexed to Exhibits A and E. *See* Aff. ¶¶ 1(i), 1(v). Although that fact evidences an expectation that the communications would remain privileged, we find it ambiguous on the issue of whether the privilege has been waived. Thus, we will afford Modell an opportunity to supplement his affidavit with regard to the documents annexed to his Affidavit as Exhibit E and with regard to the letter of December 22, 1993 annexed as part of Exhibit A in order to more clearly articulate the facts relevant to his contention that the privilege attaches to these documents.[8]

### Conclusion

Based on the foregoing, Modell's assertion of the attorney client privilege with regard to the documents in issue is sustained in part and denied in part. An order consistent with the foregoing shall be issued.

---

7. This document does not appear to have been described in the Privilege Log.

8. In our review of Modell's affidavit and annexed exhibits we could not locate the following documents which appear on the Privilege Log: a letter dated March 10, 1994 written by Devack and received by Modell regarding the Chaifetz audit; an undated, one page memorandum prepared by Modell and sent to Devack regarding Bank Leumi; an undated, one page memorandum prepared by Modell and sent to Devack regarding meetings with Bank Leumi; and an undated, one page memorandum prepared by Modell and sent to Devack regarding meetings with Bank Leumi. With respect to those documents, the debtor's motion is therefore denied.